1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                                  EASTERN DIVISION

11

12   TERESA IOANE LUALEMAGA,              )    No. ED CV 18-444-PLA
                                          )
13                   Plaintiff,           )    **MEMORANDUM OPINION AND ORDER**
                                          )
14         v.                             )
                                          )
15   NANCY BERRYHILL, DEPUTY              )
     COMMISSIONER OF OPERATIONS           )
16   FOR THE SOCIAL SECURITY              )
     ADMINISTRATION,                      )
17                                        )
                     Defendant.           )
18   _____)

19                                        I.

20                                  **PROCEEDINGS**

21         Plaintiff filed this action on March 3, 2018, seeking review of the Commissioner's[1] denial

22   of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents

23   to proceed before a Magistrate Judge on April 2, 2018, and April 3, 2018. Pursuant to the Court's

24   _____

25         [1]  On March 6, 2018, the Government Accountability Office stated that as of November 17,
     2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform
26   Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As
     of that date, therefore, she was not authorized to continue serving using the title of Acting
27   Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her
28   position of record, Deputy Commissioner of Operations.

1 | Order, the parties filed a Joint Submission (alternatively "JS") on December 4, 2018, that
2 | addresses their positions concerning the disputed issues in the case. The Court has taken the
3 | Joint Submission under submission without oral argument.

4

5 | ## II.

6 | ## BACKGROUND

7 | Plaintiff was born on October 13, 1958. [Administrative Record ("AR") at 35, 182.] The ALJ
8 | determined that plaintiff has no past relevant work experience. [AR at 35.]

9 | On February 20, 2014, plaintiff filed an application for SSI payments, alleging that she has
10 | been unable to work since April 1, 2002. [AR at 25; see also AR at 82.] After her application was
11 | denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an
12 | Administrative Law Judge ("ALJ"). [AR at 127.] A hearing was held on November 18, 2016, at
13 | which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR
14 | at 41-71.] A vocational expert ("VE") also testified. [AR at 67-70.] On December 15, 2016, the
15 | ALJ issued a decision concluding that plaintiff was not under a disability since February 20, 2014,
16 | the date the application was filed. [AR at 25-36.] Plaintiff requested review of the ALJ's decision
17 | by the Appeals Council. [AR at 178-79.] When the Appeals Council denied plaintiff's request for
18 | review on January 25, 2018 [AR at 1-6], the ALJ's decision became the final decision of the
19 | Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations
20 | omitted). This action followed.

21

22 | ## III.

23 | ## STANDARD OF REVIEW

24 | Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's
25 | decision to deny benefits. The decision will be disturbed only if it is not supported by substantial
26 | evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622
27 | F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).
28 | "Substantial evidence means more than a mere scintilla but less than a preponderance;

1 it is such relevant evidence as a reasonable mind might accept as adequate to support a
2 conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where
3 evidence is susceptible to more than one rational interpretation, the ALJ's decision should be
4 upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider
5 the entire record as a whole, weighing both the evidence that supports and the evidence that
6 detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific
7 quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir.
8 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the
9 ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not
10 rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S.
11 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order
12 must be judged are those upon which the record discloses that its action was based.").

13

14 **IV.**

15 **THE EVALUATION OF DISABILITY**

16         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
17 to engage in any substantial gainful activity owing to a physical or mental impairment that is
18 expected to result in death or which has lasted or is expected to last for a continuous period of
19 at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting
20 42 U.S.C. § 423(d)(1)(A)).

21

22 **A.     THE FIVE-STEP EVALUATION PROCESS**

23         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
24 whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468
25 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).
26 In the first step, the Commissioner must determine whether the claimant is currently engaged in
27 substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,
28 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since February 20, 2014, the application date. [AR at 27.] At step two, the ALJ concluded that plaintiff has the severe impairment of bipolar disorder. [Id.] She determined that plaintiff's medically determinable impairments of thoracic spine degenerative disc disease, hypertension, status post bilateral cataract surgery, and diabetes, are nonsevere. [AR at 27-28.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets

4

1 or medically equals any of the impairments in the Listing. [AR at 29.] The ALJ further found that

2 plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range of work at all

3 exertional levels as follows:

4      [She] is able to understand, remember, and carryout [sic] simple, routine work tasks;
       may have occasional interaction with coworkers and supervisors; and no interaction
5      with the public.

6 [AR at 30.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

7 that plaintiff has no past relevant work. [AR at 35.] At step five, based on plaintiff's RFC,

8 vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant

9 numbers in the national economy that plaintiff can perform, including work as a "hand packager"

10 (Dictionary of Occupational Titles ("DOT") No. 920.587-018), as a "floor waxer" (DOT No.

11 381.687-034), and as a "store laborer" (DOT No. 922.687-058). [AR at 36, 69.] Accordingly, the

12 ALJ determined that plaintiff was not disabled at any time since February 20, 2014, the date the

13 application was filed. [AR at 36.]

14

15                                                V.

16                                 **THE ALJ'S DECISION**

17      Plaintiff contends that (1) substantial evidence did not support the ALJ's RFC

18 determination; and (2) the ALJ erred when she rejected plaintiff's subjective symptom testimony.

19 [JS at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision

20 of the ALJ.

21

22 **A.     THE ALJ'S RFC DETERMINATION**

23      The ALJ reviewed the medical evidence of record regarding plaintiff's bipolar disorder, and

24 found that it supported her RFC assessment. [AR at 33.] The ALJ's summary of that evidence

25 _____

26      [2]  RFC is what a claimant can still do despite existing exertional and nonexertional
       limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
27     three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
       the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
28     1151 n.2 (9th Cir. 2007) (citation omitted).

                                                 5

specifically mentioned records dated between February 4, 2013, and October 3, 2016, which reflected "no complaints of depression, sadness, hopelessness, helplessness, worthlessness, impaired concentration, or suicidal ideations." [Id. (citing AR at 413).] According to the ALJ, these records also routinely reflected normal appearance, behavior, eye contact, speech, affect, mood, sleep, cognition, fund of knowledge, intellectual functioning, orientation, interaction style, cooperation, alertness, disposition, thoughts, and mood, among other things. [Id. (citing AR at 298, 343, 349, 413, 414, 418, 486, 496, 539).] The ALJ also noted that when plaintiff "was compliant with medications, she had normal interaction style, orientation, speech, thought process, and perceptual processes." [Id. (citing AR at 349).]

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. [JS at 4.] She states that the ALJ "failed to properly consider the relevant medical evidence of record in this case supportive of Plaintiff's claim of disability," specifically plaintiff's "severe chronic mental impairments, which have rendered her consistently incapable of persisting at any full time competitive employment at all times since 1986, when she was originally found disabled due to her mental impairments by this same Administration," and "the variability and volatility in Plaintiff's symptoms which render her unreliable at persisting at full time employment." [JS at 4-5.] Plaintiff further notes that she "received those [previous] SSI benefits for approximately 27 years until her benefits were terminated for non-disability reasons in 2013, when she was incarcerated. Upon release in 2014, [plaintiff] reapplied for benefits, which is the current application being appealed, only to be found not disabled at the age of 55, with no past relevant work in the past 15 years." [Id. (citations omitted).] In support of her position, plaintiff points out that on January 15, 2013, a few months after her incarceration began, plaintiff was found to be "delusional with the express belief that she was pregnant with twins"; a few days later, on January 18, 2013, she "expressed suicidal ideations with thoughts of committing suicide by hanging herself," and stated that she was "pregnant and hungry" and wanted to die, and "was found to be in need of protection from other prisoners as well as having suicide precautions"; on March 13, 2013, she "was found to have an altered mental status"; on July 25, 2013, and October 17, 2013, she was diagnosed with a bipolar disorder and a global assessment of functioning ("GAF") score

of 45; and on April 11, 2014, plaintiff's daughter reported to plaintiff's psychiatric therapist that plaintiff "can become very manic, being up for days ho[a]rding everything, and cleaning extensively without resting." [JS at 5-6 (citing AR at 299, 304, 342, 343, 344, 345, 365. 415).]

Defendant responds that although plaintiff "may have received benefits in 1986, . . . somewhere she lost the benefits and they were reinstated in 2004." [JS at 6.] According to defendant, plaintiff's records show that she was married in 1979 and that between 1979 and 1988 she had six children, sometimes worked outside the home, and was divorced in 2003. [JS at 6-7 & n.1.] Her benefits were terminated again in 2013 when she was incarcerated. [JS at 7 (citing 20 C.F.R. §§ 416.1325(a), 416.1335).] Defendant notes that although plaintiff "faults the ALJ" for rejecting the opinions of the consultative psychiatric examining physician and the state agency review physicians, those physicians "essentially found *no* severe impairments." [Id. (emphasis added) (citing AR at 34, 77-78, 87-89, 403-07).] Indeed, the ALJ specifically stated that the opinions of these physicians were given little weight *because* they found no severe impairment and because they had "inadequately considered the objective medical evidence of record, which demonstrates that [plaintiff] had more than mild limitations," and that she had a history of treatment as well as a continued need for mental health treatment and psychotropic medications. [AR at 34.] Defendant also states that the ALJ properly found plaintiff had mild limitations in activities of daily living, and moderate difficulty in social functioning and maintaining concentration, persistence, and pace. [JS at 8 (citing AR at 29).] Defendant notes that the ALJ considered the few clinical findings and gave plaintiff "the benefit of the doubt and restricted her to simple routine tasks, with occasional interactions with co-workers, and no interaction with the public." [JS at 9 (citing AR at 30).] Defendant concludes that the RFC determination "reasonably reflects" the medical evidence from the treatment notes and other record evidence, and that the totality of the record supports the ALJ's RFC determination, as there is nothing suggesting that she cannot perform simple routine tasks. [JS at 9-10 (citations omitted).]

A claimant's RFC is "the most" that a claimant can do despite her limitations. 20 C.F.R. § 416.945(a). It is "based on all the relevant medical and other evidence in [the] case record." Id.; see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th Cir. 2003). The ALJ

must consider the total limiting effects caused by medically determinable impairments and the claimant's subjective pain. Garrison, 759 F.3d at 1011 (citing 20 C.F.R. § 416.920(e)). The RFC need not parrot the opinion of a particular doctor, but rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

After reviewing the record, the Court agrees with defendant that the ALJ reasonably determined that the objective medical evidence does not reflect a more restricted RFC than determined by the ALJ and that sufficient evidence supported that determination, notwithstanding plaintiff's reliance on several mental health "incidents" that occurred in January and March 2013, a few months after she began her incarceration (and prior to the filing of her application for SSI). With respect to those "incidents," on January 15, 2013, plaintiff reported that she believed that she was pregnant with twins [AR at 342], and on January 18, 2013, she again stated she was pregnant with twins and referred to one of the correctional officers "as her 'baby's daddy.'" [AR at 343.] On January 18, 2013, she also told one of the officers that she had thought about hanging herself, but decided she did not want to, and later explained that "it was just a misunderstanding and she was just hungry," as she had either missed her breakfast or her lunch, which made her "mad." [AR at 343, 344.] Later that same day plaintiff was found lying in the prison yard after purportedly being "jumped" by other inmates. [AR at 345.] In contrast to plaintiff's suggestion that the institution found that plaintiff was in need of protection [see JS at 6 ("[plaintiff] was found in need of protection from other prisoners")], it was plaintiff who told the correctional officers that "she needs protection from people in the yard." [Id.] After these incidents, plaintiff was placed on a "five-day follow-up" as a precaution, and "[b]rief supportive therapy and empathic listening" were provided. [AR at 343.] It appears that plaintiff may have been moved to another unit after these incidents, her medication was changed, and she then participated regularly and appropriately in group sessions. [AR at 282-402, 412-17.] The final incident relied on by plaintiff as demonstrating an "altered mental status" [JS at 6], occurred on March 13, 2013: plaintiff was waiting in the custody line when she fainted and fell backwards.

1   [AR at 365.] The treatment notes resulting from the March 13, 2013, fainting incident speculated

2   that the incident may have been due to a recent increase in plaintiff's Vistaril medication, and the

3   dosage was reduced [AR at 366]; discharge records from the hospital after her fainting episode

4   purportedly reflected that plaintiff was identified with hypothyroidism, pancreatitis, hypertension,

5   syncope, and "having prolonged QT and QTC" (a heart rhythm condition that can cause rapid

6   heartbeats and trigger a fainting spell (https://www.mayoclinic.org (last visited December 12,

7   2018))).

8          Notwithstanding these few incidents early in plaintiff's incarceration, the rest of the prison

9   psychiatric records reflect only positive observations and behaviors, including active participation

10  in a number of counseling groups, clear and coherent speech and thought processes, no

11  delusional signs, no signs or symptoms of psychosis, and plaintiff's regular reports that she was

12  "good" or "doing real well," or other similar things. [AR at 32; see also, e.g., AR at 282-402.]

13  Similarly, the mental health treatment records after plaintiff's release from incarceration in early

14  2014 reflect that her appearance, behavior, eye contact, speech, affect, mood, thought processes,

15  thought content, and cognitive abilities, among other things, all were within normal limits, and

16  delusions or homicidal/suicidal ideations were denied or absent. [AR at 32-34; see also, e.g., AR

17  at 412-551.] Plaintiff points to no affirmative evidence, and the Court has not found any such

18  evidence in the record, demonstrating that plaintiff is unable to perform the requirements of the

19  occupations determined by the ALJ to be consistent with her RFC determination. [AR at 35-36.]

20         The ALJ's RFC determination was based on substantial evidence of record and remand

21  is not warranted on this issue.

22

23  **B.      SUBJECTIVE SYMPTOM TESTIMONY**

24      **1.      Legal Standard**

25         Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[3] 16-3p went into

26  _____

27      [3]   "SSRs do not have the force of law.  However, because they represent the Commissioner's
    interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs
28                                                                                      (continued...)

9

1  effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[4] SSR 16-3p supersedes SSR 96-7p,

2  the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL

3  5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from

4  our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so,

5  we clarify that subjective symptom evaluation is not an examination of an individual's character[;]

6  [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.;

7  Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall

8  character or truthfulness in the manner typically used during an adversarial court litigation. The

9  focus of the evaluation of an individual's symptoms should not be to determine whether he or she

10  is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider

11  all of the evidence in an individual's record," "to determine how symptoms limit ability to perform

12  work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what

13  our precedent already required: that assessments of an individual's testimony by an ALJ are

14  designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the

15  individual has a medically determinable impairment(s) that could reasonably be expected to

16  produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character

17  and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

18       To determine the extent to which a claimant's symptom testimony must be credited, the

19

_____

20    [3](...continued)

21  if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202
   n.1 (9th Cir. 2001) (citations omitted).

22

23    [4]   SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017,
   with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28,
   2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017);

24  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect
   [other] revised regulations that became effective on March 27, 2017," the Administration stated

25  that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate
   statements regarding the intensity, persistence, and limiting effects of symptoms in disability

26  claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior

27  precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear
   what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of

28  the term "credibility," case law using that term is still instructive in the Court's analysis.

1  Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759

2  F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective

3  medical evidence of an underlying impairment which could reasonably be expected to produce

4  the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v.

5  Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue,

6  504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the

7  first test, and the ALJ does not make a "finding of malingering based on affirmative evidence

8  thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate

9  the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

10 [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017

11 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must

12 consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain

13 or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side

14 effects of medication taken to alleviate pain or other symptoms; treatment, other than medication

15 received for relief of pain or other symptoms; any other measures used to relieve pain or other

16 symptoms; and other factors concerning a claimant's functional limitations and restrictions due

17 to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-

18 84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case

19 record, including the objective medical evidence; an individual's statements . . . ; statements and

20 other information provided by medical sources and other persons; and any other relevant

21 evidence in the individual's case record.").

22      Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

23 did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective

24 symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d

25 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina

26 v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759

27 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility]

28 are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014). In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." Id. "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. Id. at *9. The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. Id.

2.    **The Parties' Contentions**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for discounting plaintiff's subjective symptom testimony. [JS at 11.] She submits that her "subjective statements

12

throughout this lengthy claims process in combination with her testimony under oath at the hearing in this matter are completely consistent, with not only her other statements of record but also the treating psychiatric records." [Id.] She states that she has consistently maintained that while she may be capable of engaging in certain minimal activities of daily living, she has also consistently maintained "that she is not capable of persisting at those activities in many instances through to completion and certainly not as would be required by any full time competitive employment." [JS at 11-12 (citing AR at 49-67, 219, 220, 242-50, 254, 263, 264).] Plaintiff argues that the ALJ did not clearly specify which statements plaintiff made that were not "sufficiently credible." [JS at 12 (internal quotation marks omitted).] She again suggests "that it is not reasonable nor rational to expect a 58 year old female with no past relevant work history, who was on disability for 27 of the 30 years leading up [to] the ALJ decision, and who has severe mental impairments to all of a sudden be capable of jumping into the competitive labor market and perform the medium occupations" suggested by the ALJ. [JS at 13.] She states that the Administration failed to consider the "obvious evidence which exists in this case and which does not appear to be part of this Administrative Record which would document the reasons why she was awarded SSI benefits for her mental impairments in 1986, and undoubtedly numerous continuing disability reviews which were rendered between 1986 until her benefits were ultimately terminated for non-disability reasons in 2013." [Id.] She states that the "logical interpretation of the ALJ's evaluation of all of these facts is that Plaintiff's incarceration from 2013 to 2014 apparently cured her mental impairments which had otherwise previously been found disabling over a 27 year period of time," which is "neither reasonable nor rational." [Id.]

Defendant responds that the ALJ properly found that the objective clinical findings reflect plaintiff's mental functioning as normal; that plaintiff at times failed to comply with treatment; that when plaintiff is compliant with her medication, her symptoms are well-controlled; that plaintiff's claims of poor concentration were contradicted by the record which showed plaintiff's mental status examinations within normal limits; and that plaintiff's admitted activities of daily living were inconsistent with her subjective symptom testimony. [JS at 15-16.] Defendant states that the ALJ, therefore, "looked at the evidence in the record and considered factors recognized by the

1 | Ninth Circuit for evaluating subjective complaints," and her rationale was sufficiently specific "to
2 | allow a reviewing court to conclude [she] rejected these complaints on permissible grounds and
3 | did not arbitrarily discredit [plaintiff's] symptoms." [JS at 17-18.]

4 |

5 | **3. Analysis**

6 | In discounting plaintiff's testimony, the ALJ found the following: (1) the record was "replete
7 | with examples of [plaintiff's] improved condition" since the application date, and reflected "normal
8 | alertness, orientation, perceptual processes, speech, dress, thought content, affect, focus, insight,
9 | judgment, mood, no manic symptoms, and normal mental status examinations," among other
10 | things; (2) although plaintiff reported difficulty being around others, there was insufficient evidence
11 | in the record to establish that plaintiff was "highly antagonistic, uncooperative, hostile, or acted
12 | in a socially unacceptable manner"; (3) although plaintiff alleged she had difficulty focusing and
13 | concentrating, her mental status examinations indicated that she had "normal thought content,
14 | focus, insight, judgment, mood, concentration, abstract thinking, and fund of knowledge"; (4)
15 | plaintiff's activities of daily living were inconsistent with her testimony, some of the "physical and
16 | mental abilities and social interactions required in order to perform these activities are the same
17 | as those necessary for obtaining and maintaining employment," and there was insufficient
18 | evidence to establish that plaintiff had serious difficulties performing her daily activities "without
19 | direct supervision, in a suitable manner, or on a consistent basis"; and (5) other information in the
20 | case record was inconsistent with plaintiff's testimony, including (a) statements in plaintiff's
21 | function report that did *not* reflect needing assistance with personal care tasks or that she had
22 | problems with being around others, (b) plaintiff's reports of no mental health complaints at her
23 | treatment visits and stating, for example, that "things for her are real good," and (c) medical
24 | records since plaintiff's release from prison reflecting that plaintiff has not been psychiatrically
25 | hospitalized and has had few changes to her medications. [AR at 31-34.] The ALJ also noted
26 | that plaintiff's failure to follow prescribed treatment that might improve her symptoms is
27 | inconsistent with her statements, and when she was compliant with her medication, "she had
28 | normal interaction style, orientation, speech, thought process, and perceptual processes." [AR

1 at 33.]

2

3                    a.    **Objective Medical Evidence**

4         The ALJ generally found that plaintiff's "allegations concerning the intensity, persistence

5 and limiting effects of her symptoms" were only "partially supported" by the medical record. [Id.]

6 She specifically mentioned plaintiff's testimony that her symptoms had persisted and continued

7 since the application date, and contrasted that testimony with the medical evidence reflecting that

8 plaintiff's condition had improved since that date. [AR at 32.] The ALJ also noted that plaintiff's

9 testimony about the intensity, persistence, and limiting effects of her symptoms was inconsistent

10 with the medical evidence reflecting normal thought processes, normal mental status

11 examinations, and no manic symptoms, as well as with plaintiff's statements to her treating

12 providers that she was doing well, and had no complaints, among other things. [AR at 32-33.]

13 Additionally, although plaintiff alleged she had difficulty focusing and concentrating, the ALJ noted

14 that her mental status examinations indicate that she had "normal thought content, focus, insight,

15 judgment, mood, concentration, abstract thinking, and fund of knowledge." [AR at 33.] She also

16 observed that although plaintiff alleged she had difficulty interacting with others, there was

17 insufficient evidence to establish that plaintiff was "highly antagonistic, uncooperative, hostile, or

18 acted in a socially unacceptable manner." [AR at 29.]

19         While a lack of objective medical evidence supporting a plaintiff's subjective complaints

20 cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871

21 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in

22 evaluating symptom testimony. See Burch, 400 F.3d at 681 ("Although lack of medical evidence

23 cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in

24 his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a

25 useful indicator to help make reasonable conclusions about the intensity and persistence of

26 symptoms, including the effects those symptoms may have on the ability to perform work-related

27 activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can

28 be clinically observed and recorded in the medical evidence.  . . .  These findings may be

1    consistent with an individual's statements about symptoms and their functional effects. However,
2    when the results of tests are not consistent with other evidence in the record, they may be less
3    supportive of an individual's statements about pain or other symptoms than test results and
4    statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304,
5    at *5. As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony
6    is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of
7    that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v.
8    Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding
9    the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his
10   testimony is "inconsistent with the above residual functional capacity assessment" is an
11   insufficient basis for discrediting testimony).

12        Here, a review of plaintiff's mental health treatment records reflects that but for the few
13   "incidents" in early 2013 relied on by plaintiff in the Joint Submission, all of which occurred a few
14   months after her incarceration began (and prior to her application date) and are described above
15   in the discussion regarding plaintiff's first issue, plaintiff's mental status examinations and
16   treatment records both in prison and after her release have showed little to no symptoms or
17   complaints related to her bipolar disorder, including no evidence of hostility, socially unacceptable
18   behavior, or antagonistic and uncooperative behavior.  In fact, plaintiff's treatment records,
19   including her mental status examinations, routinely reflect -- as specifically found by the ALJ -- that
20   plaintiff presented with a normal interaction style, speech, thought content, appearance, eye
21   contact, mood, judgment, concentration, memory, orientation, affect, behavior, and disposition.
22   [AR at 33 (citations omitted).]  Also as noted by the ALJ, plaintiff's medical records on June 25,
23   2014, reflected that plaintiff was "clinically stable," and had normal insight, judgment, and impulse
24   control.  [Id. (citing AR at 414).]  SSR 16-3p and relevant case law do not require that an ALJ
25   simply ignore inconsistencies between objective medical evidence and a claimant's testimony.
26   Accordingly, it was reasonable for the ALJ to find that plaintiff's subjective symptom statements
27   were not consistent with and/or supported by the objective medical evidence of record.

28        Based on the foregoing, the Court finds that this was a specific, clear and convincing

1  reason for discounting plaintiff's subjective symptom testimony. However, because this cannot
2  be the sole legally sufficient reason for discounting plaintiff's subjective symptom testimony, the
3  ALJ's determination to discount that testimony rises or falls with her other grounds for discrediting
4  plaintiff's testimony.

### b.  Daily Activities

7  The ALJ also found that plaintiff's activities of daily living as stated in her Adult Function
8  Report [AR at 242-50], such as performing personal care tasks, preparing meals, cleaning, doing
9  laundry, ironing, shopping in stores, handling money, attending church, walking, and reading, were
10  inconsistent with her statements concerning the alleged intensity, persistence, and limiting effects
11  of her symptoms as testified to at the hearing. [AR at 31-32.] She also determined that "[s]ome
12  of the physical and mental abilities and social interactions required in order to perform these
13  activities are the same as those necessary for obtaining and maintaining employment." [Id.]

14  An ALJ may discredit testimony when a claimant reports participation in everyday activities
15  indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However,
16  "[e]ven where those activities suggest some difficulty functioning, they may be grounds for
17  discrediting the claimant's testimony to the extent that they contradict claims of a totally
18  debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir.
19  2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in
20  daily activities that are incompatible with the severity of symptoms alleged can support an adverse
21  credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim v. Colvin, 763 F.3d 1154, 1165
22  (9th Cir. 2014)).

23  Plaintiff contends that while she is capable of engaging in activities of daily living, her
24  participation was "minimal," and she has consistently maintained "that she is not capable of
25  persisting at those activities in many instances through to completion and certainly not as would
26  be required by any full time competitive employment." [JS at 11-12.]

27  Here, although the ALJ specifically identified a few of the daily activities engaged in by
28  plaintiff and found that they demonstrated that plaintiff was able to perform work within the RFC

1  determination [AR at 31-32], the amount of involvement plaintiff described in some of these
2  activities in her hearing testimony was minimal. For instance, she testified that she worked in the
3  prison kitchen serving food, but she did not work every day at that job [AR at 56]; she forgets to
4  complete laundry tasks [AR at 59]; she walks for only ten minutes in the morning [id.]; plaintiff's
5  daughter makes her lunch because plaintiff has left the water boiling on the stove in the past [AR
6  at 59-60]; and she has days when she has difficulty doing things around the house and performing
7  her personal care activities. [AR at 65.] However, as noted by the ALJ, in plaintiff's Adult Function
8  Report -- and inconsistent with her testimony -- plaintiff stated that she does 3 hours of cleaning
9  daily, 2 hours of laundry weekly, 20 minutes of ironing daily, cooks complete meals with several
10  courses every day (taking between 1-2 hours to do so), goes shopping and out to eat daily, and
11  goes to church weekly. [AR at 243-47.] Accordingly, the ALJ's finding that plaintiff's hearing
12  testimony regarding the limiting effects of her symptoms was inconsistent with her activities as
13  described in her Adult Function Report was a specific, clear and convincing reason for discounting
14  plaintiff's subjective symptom testimony.

15          However, the ALJ did not explain how plaintiff's daily activities are transferable to a work
16  setting. "[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving
17  the performance of physical functions that *are* transferable to a work setting, a specific finding as
18  to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair v. Bowen,
19  885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original). An ALJ "must make specific findings
20  relating to the daily activities and their transferability to conclude that a claimant's daily activities
21  warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)
22  (citation and alteration omitted). Here, the ALJ neither made specific findings nor pointed to any
23  record evidence to support her conclusion that plaintiff's daily activities were "transferable" to a
24  work setting. See id.

25          Accordingly, the ALJ's finding that plaintiff's daily activities are transferable to a work setting
26  was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom
27  testimony.

28

18

1          **c.    Inconsistency With Other Evidence**

2          The ALJ also discounted plaintiff's statements as "inconsistent with other evidence in the

3    record." [AR at 32.] She specifically noted that although plaintiff testified she had difficulty

4    performing personal care tasks and needed her daughter's assistance to wash her hair, plaintiff

5    did not note this problem in her function report, and her daughter also stated that plaintiff could

6    perform personal care tasks without problem. [AR at 32 (citations omitted).] The ALJ further

7    observed that although plaintiff testified she had difficulty being around others, she was able to

8    attend church and shop in stores. [Id. (citations omitted).] Although plaintiff testified that she had

9    significant bipolar symptoms, the ALJ pointed out that on several occasions plaintiff stated that

10   she had no mental health complaints. [Id. (citations omitted).] And, although plaintiff stated she

11   was depressed and had constant bipolar symptoms, she also reported to her treating providers

12   that "things for her are real good," she attended church regularly, she had no manic symptoms,

13   and the findings from her mental status examinations were normal. [Id. (citations omitted)

14   (internal quotation marks omitted).] Finally, since her release from prison, the ALJ noted that

15   plaintiff has not been psychiatrically hospitalized and has had few changes to her medications.

16   [Id.]

17          "Other evidence" may include the claimant's daily activities, medications, other measures

18   used to alleviate symptoms, and any other factors the ALJ deems relevant. See 20 C.F.R. §§

19   416.929(c)(3)(i)-(vii). Each of the reasons given by the ALJ for discounting plaintiff's testimony

20   based on "other evidence," were clear and convincing and supported by substantial evidence.

21

22          **d.    Failure to Comply With Treatment**

23          The ALJ found that plaintiff's failure to follow prescribed treatment that might improve her

24   symptoms was inconsistent with her statements, and when plaintiff was compliant with her

25   medication "she had normal interaction style, orientation, speech, thought process, and perceptual

26   processes." [AR at 33.]

27          "A claimant's subjective symptom testimony may be undermined by an 'unexplained, or

28   inadequately explained, failure to . . . follow a prescribed course of treatment.'" Trevizo, 871 F.3d

                                                    19

1     at 679 (quoting Fair, 885 F.2d at 603); see also SSR 16-3p, 2017 WL 5180304, at *9 (failure to

2     follow treatment may result in an ALJ finding that the alleged intensity and persistence of

3     symptoms are inconsistent with the overall record, but only after considering possible reasons the

4     claimant may not comply with or seek treatment consistent with the degree of her complaints).

5     Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the

6     claimant's pain testimony." Trevizo, 871 F.3d at 679 (quoting Fair, 885 F.2d at 603) (internal

7     quotation marks omitted). In Trevizo, the court found that the ALJ did not provide clear and

8     convincing reasons for rejecting a plaintiff's credibility when relying on two instances of the

9     claimant failing to take her medication as a reason to discount her testimony. First, Trevizo was

10     prescribed narcotics for pain but did not take them because of a fear of becoming addicted.

11     Trevizo, 871 F.3d at 679-80. Second, she was noncompliant with taking her diabetes medication

12     because she feared that the medication was causing severe rashes. Id. at 680. Trevizo also

13     indicated that there were periods in which she could not afford her diabetes medication. Id. at

14     680-81. The court held that Trevizo provided adequate explanations in both instances. Id. at 681.

15     Therefore, the claimant's noncompliance was not "clear and convincing" evidence for rejecting her

16     testimony. Id. at 682.

17        Here, the ALJ pointed to two treatment records reflecting that plaintiff had refused her

18     medications. [AR at 33 (citing AR at 360, 417).] However, as in Trevizo, these two notes do not

19     provide clear and convincing reasons for rejecting plaintiff's testimony. The first note, dated

20     March 8, 2013, reflected that plaintiff stated she had stopped her medications "because she is not

21     resting well." [AR at 360.] Based on plaintiff's complaint, the psychiatrist increased her Vistaril.

22     [AR at 361.] The second note, dated March 14, 2014, was merely relaying the incident that

23     resulted in plaintiff's arrest (and predated her incarceration and application dates): she "was

24     apparent[ly] in a heightened manic episode and had not been taking psychotropic medication for

25     previously diagnosed Bipolar Disorder." [AR at 417.] Accordingly, these two notes do not

26     constitute a clear and convincing reason to discount plaintiff's subjective symptom testimony.

27        However, the ALJ's finding that when plaintiff was compliant with her medication, "she had

28     normal interaction style, orientation, speech, thought process, and perceptual processes" is clearly

1    supported by the record, which reflects, as the ALJ noted, no complaints of depression, sadness,

2    hopelessness, helplessness, worthlessness, impaired concentration, or suicidal ideation; and the

3    record also reflects normal speech, thought content, perceptual processes, eye contact, memory,

4    interaction style, affect, mood, cognition, fund of knowledge, intellectual functioning,

5    concentration, memory, orientation, judgment, and insight, among other things.  [AR at 33.]

6    Impairments that can be effectively controlled with medication are not disabling for purpose of

7    determining eligibility for SSI benefits.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001,

8    1006 (9th Cir. 2006) (citations omitted); see also Peteresen v. Berryhill, 737 F. App'x 329, 332 (9th

9    Cir. June 19, 2018) (citing Warre and finding ALJ properly relied on evidence that the claimant's

10   pain and symptoms were controlled with medication and treatment).

11          Accordingly, the ALJ's finding that when plaintiff is compliant with her medications her

12   symptoms are controlled was a clear and convincing reason to discount plaintiff's subjective

13   symptom testimony.

14

15          **4.    Conclusion**

16          Based on the foregoing, in addition to her legally sufficient finding that plaintiff's subjective

17   symptom testimony was not supported by the objective medical evidence, the ALJ provided other

18   clear and convincing reasons for discounting plaintiff's subjective symptom testimony that also

19   were "sufficiently specific" to allow this Court to conclude that the ALJ discounted plaintiff's

20   testimony on permissible grounds and did not arbitrarily discredit her testimony regarding the

21   intensity, persistence, and limiting effects of her bipolar symptoms.  Brown-Hunter, 806 F.3d at

22   493 (quoting Bunnell, 947 F.2d at 345-46).  Remand is not warranted on this issue.

23   /

24   /

25   /

26   /

27   /

28   /

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 18, 2018

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE